

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**HENRY RAY DUNCAN, II,**

      Plaintiff,

v.

      Civil Action No. **3:12CV482**

**HAROLD CLARKE,** *et al.*,

      Defendants.

## MEMORANDUM OPINION

Henry Ray Duncan, II, a Virginia prisoner proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.[1] Duncan contends that Defendants Harold Clarke, Warden G.M. Hinkle, and Lt. M. R. Handsome ("Defendants"),[2] violated his Eighth Amendment[3] rights by failing to protect Duncan from injury and by providing inadequate medical care during his incarceration in the Greensville Correctional Center. The matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 25) on the ground

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court corrects the spelling of the Defendants' names as noted in the Memorandum in Support of Defendant's Motion for Summary Judgment. (*See* Mem. Supp. Mot. Summ. J. 1 n.1 & n.2.)

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

that Duncan failed to exhaust his administrative remedies. Duncan has responded. (ECF
No. 33.)[4] The matter is ripe for disposition.

## I.    Summary of Allegations

Around noon on June 21, 2011, Duncan reported to Defendant Handsome that his
roommate, James Stacey, had threatened to beat him up in order to take Duncan's bottom bunk.
(Compl. 11.)  Handsome instructed Sgt. Wharton to return Duncan to his cell and to bring
Stacey to him. (*Id.*) Duncan explains

> While Stacey got ready other CO's done count. Stacey was tak[en] out of cell and
> Plaintiff put in the cell. After 5 to 10 minutes Stacey returned to the cell alone (no
> C.O.) . . . . Stacey . . . called Plaintiff a snitch and started hitting Plaintiff a
> number of times. Plaintiff got around Stacey and ran out of cell but fell down.
> While on the floor[,] Stacey kicked Plaintiff two or three times. Plaintiff got up to
> run again but fell back down and Stacey kicked him 10 or more times. Mostly in
> the head.

(*Id.*)

Officers took Duncan to the infirmary where a nurse took his vitals, cleaned the blood
from his head, and sent Duncan to Handsome's office where he remained from 12:15 p.m. until
2:56 p.m. (*Id.* at 11–12.)  Duncan informed Handsome "over and over that his head hurt really
bad, he was dizzy and seeing spots." (*Id.* at 12.) Handsome sent Duncan to isolation for fighting
with an inmate although the charge was subsequently dropped. (*Id.*)  Duncan contends:
"Defendant . . . Handsome's lack of action concerning medical complaint by Plaintiff was a
deliberate indifference to Plaintiff's serious medical needs" and violated Duncan's rights under
the Eighth Amendment.

---

[4] The Court employs the PageID# assigned by the CM/ECF docketing system for
citations to and quotations from Duncan's submissions. The Court corrects the spelling and
capitalization in quotations from Duncan's submissions.

After staying in isolation for approximately four minutes, at 3:00 p.m. Duncan informed

an officer that he needed to see medical due to pain and dizziness. (*Id.*) A nurse came to see

him at 3:30 p.m., gave Duncan Tylenol, "but they didn't help at all." (*Id.*) At 4:30 p.m. Duncan

submitted an emergency grievance, and sometime after 6:45 p.m., the medical department sent

Duncan to the emergency room for MRIs. (*Id.* at 13.) Duncan explains that the

> MRI showed Plaintiff has a head concussion-contusing with blood between the
> brain and skull. From there Plaintiff was sent to MCV to be seen by a
> neurosurgeon who put Plaintiff in ICU for about 2-days (6-21-11 to 6-22-11) after
> which Plaintiff was put in DOC's security ward for 2 more days (6-23-11 to 6-24-
> 11) to keep check on him and have an eye doctor see Plaintiff for bleary vision.
> "Plaintiff now has to use reading glasses to see close up" to this day. After being
> released from MCV Plaintiff was put in the infirmary at Greensville Corr. Center
> for 13 more days (6-24-11 to 7-6-11) being treated for bad head [illegible].

(*Id.*)

In his "Legal Claims" section, Duncan raises the following claims for relief:

Claim One:   Defendant Handsome "was deliberate indifference [sic] and violated
Plaintiff's rights, and constituted cruel and unusual punishment under the
Eighth Amendment," "by failing to protect Henry Ray Duncan II from
being attacked by inmate James Stacey." (*Id.* at 14.)

Claim Two:   Defendant Handsome exhibited "deliberate indifference to . . . Duncan['s]
serious medical needs" in violation of the Eighth Amendment. (*Id.*)

Duncan requests monetary damages and any relief deemed appropriate by the Court. (*Id.*
at 15.)

## II.   Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the

Court of the basis for the motion and identifying the parts of the record which demonstrate the

absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

Moreover, not all disputes of fact preclude summary judgment. Instead, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248. With respect to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* As to genuineness, the nonmoving party "must produce . . . evidence that creates a fair doubt; wholly speculative assertions will not suffice." *Bongam v. Action Toyota, Inc.*, 14 F. App'x 275, 280 (4th Cir. 2001) (citation omitted) (internal quotation marks omitted). "A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993) (quoting *Anderson*, 477 U.S. at 249–50). Thus, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting

4

*Beale v. Hardy*, 769 F.3d 213, 214 (4th Cir. 1985)). Nor will mere "'metaphysical doubt as to the material facts'" create a genuine dispute. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Accordingly, "[t]he nonmovant can show that a dispute is genuine only if it provides sufficient evidence so that a 'reasonable jury could return a verdict for the nonmoving party.'" *Wiggins v. DaVita Tidewater LLC*, 451 F. Supp. 2d 789, 796 (E.D. Va. 2006) (quoting *Anderson*, 477 U.S. at 248).

Defendants ask the Court to dismiss Duncan's claims because Duncan failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants' bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their Motion for Summary Judgment, Defendants submit: the Affidavit of K. Whitehead, the Institutional Ombudsman at the Greenville Correctional Center (Mem. Supp. Mot. Summ. J. Ex A, at 1–5 ("Whitehead Aff.")), a copy of Virginia Department of Corrections ("VDOC") Operating Procedure § 866.1 (*id.* Encl. A ("Operating Procedure § 866.1")),[5] and copies of grievance material submitted by Duncan (*id.* Encl. B–E).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Duncan submitted an unsworn Complaint and an unsworn Brief in Opposition (ECF No. 33), his own affidavit (ECF No. 33, at 146–48 ("Duncan Aff.")), and some grievances that he submitted (*see, e.g.*, Br. Opp'n Ex. 1–A, 4–A). Because Duncan failed to swear to the contents of his Complaint or Brief in Opposition under penalty of perjury, those documents fail to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). In light of the foregoing principles

---

[5] The Court has omitted the emphasis in the quotations from this document.

5

and submissions, the facts set forth below are established for purposes of the Motion for

Summary Judgment.

### III. Summary of Pertinent Facts

#### A.    VDOC's Grievance Procedure

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to

resolve inmate complaints at Greensville Correctional Center ("Greensville"). (Whitehead Aff.

¶ 4.) Offenders are oriented to the offender grievance procedure when they are initially received

into the Virginia Department of Corrections ("VDOC") and each time they move to a new

facility. (*Id.*) Operating Procedure § 866.1 requires that, before submitting a formal grievance,

the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance

informally through the procedures available at the institution to secure institutional services or

resolve complaints. (Operating Procedure § 866.1.V.A.) Generally, a good faith effort requires

the inmate to file an informal complaint form. (*Id.* § 866.1.V.A.1.) If the informal resolution

effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular

Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted

by the offender through the facility mail system to the Facility Unit Head's Office for processing

by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender

must attach to the regular grievance a copy of the informal complaint. (*Id.* § 866.1.VI.A.2.a.)

Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was

logged without the offender receiving a response, the offender may submit a Grievance on the

issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the

issue informally." (*Id.* § 866.1.V.A.2.) A formal grievance must be filed within thirty days from

6

the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "Grievance Receipt" is issued to the inmate within two days. (*Id.* § 866.1.VI.B.2.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.3.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.4.)

### 2. Grievance Appeals

Up to three levels of review for a regular grievance exist. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.f.)

### B. Facts Pertaining to Duncan's Exhaustion of Administrative Remedies

The following facts are undisputed unless otherwise noted. On June 21, 2011, inmate Stacey attacked Duncan causing Duncan to sustain an injury. (Duncan Aff. ¶¶ 7–11.)

7

Institutional records indicate that Duncan was at MCV Hospital from June 22, 2011 until he returned to Greensville on June 24, 2011. (Whitehead Aff. ¶ 10; *see also* Duncan Aff. ¶ 18.) Duncan was housed in the infirmary in Greensville continuously from June 24, 2011 until July 6, 2011. (Whitehead Aff. ¶ 10.) Offenders assigned to the infirmary have access to the institutional grievance process and are not prevented from filing grievances. (*Id.*)

### 1. Duncan's July 12, 2011 Informal Complaint

Records indicate that Duncan waited until July 12, 2011 to file his informal complaint about the June 21, 2011 incident. (*Id.* ¶ 11; Br. Opp'n Ex. 4–A, at 1.) The staff in housing unit #10 logged his informal complaint (GCC-INF-05887) on July 14, 2011, and responded on July 22, 2011, well in advance of the July 29, 2011 fifteen-day response period. (Whitehead Aff. ¶ 11; Mem. Supp. Opp'n Ex. 4–A, at 1).[6]

### 2. Duncan's July 13, 2011 Grievance

On July 13, 2011, prior to receiving a response to his informal complaint, Duncan wrote a regular grievance in which he complained that Handsome and Sergeant Wharton sent Duncan back to his cell with Inmate Stacey after Stacey had threatened to beat up Duncan. (Whitehead Aff. ¶ 6; *id.* Encl. B, at 1.) On July 14, 2011, staff rejected the grievance on intake because Duncan failed to attach the informal complaint demonstrating the Duncan had used the informal process to resolve his complaints prior to filing a grievance as required by Operating Procedure 866.1. (Whitehead Aff. ¶ 6; *id.* Encl. B, at 2.)

---

[6] Duncan states that, while in the infirmary, "prior to July 14, 2011, [he] did fill out and stick in the closed locked door an Informal Complaint. (Duncan Aff. ¶ 2.) In a document attached to his July 13, 2011 grievance, dated July 15, 2011, two days after he signed the grievance, Duncan alleges that his "informal complaints were wrote and put in the door of cell HU 11/D7 on the night of 6/27/11," but that he received no response. (Br. Opp'n Ex. 1–A, at 2.) However, Duncan submits no admissible evidence that he submitted a grievance on June 27, 2011. The Court addresses this allegation *infra* Part IV.B.3.

### 3.   Duncan's July 14, 2011 Grievance

The grievance office received a second regular grievance on July 14, 2011. (Whitehead

Aff. ¶ 7; *id.* Encl. C, at 1.) Duncan complained that after Stacey attacked him, he received

inadequate medical treatment, was subsequently sent to Handsome's office, and he was forced to

file an emergency grievance to obtain medical care. (Whitehead Aff. ¶ 7; *id.* Encl. C, at 1.) On

July 14, 2011, staff rejected the grievance on intake because he failed to attach an informal

complaint demonstrating his attempts at informal resolution as required by Operating Procedure

866.1. (Whitehead Aff. ¶ 7; *id.* Encl. C, at 2.)

### 4.   Duncan's August 4, 2011 Grievance

On August 4, 2011, the institutional grievance office received a regular grievance from

Duncan in which he complained about Handsome and Sergeant Wharton placing him in the cell

with Stacey. (Whitehead Aff. ¶ 8; *id.* Encl. D, at 1.) In the grievance, Duncan acknowledged

that the grievance was filed more than thirty days from the June 21, 2011 incident; however, he

explained that the late filing was "beyond inmates control . . . due to being in MCV & infirmary

for 14 days." (Whitehead Aff. Encl. D, at 1 (internal quotation marks omitted); *id.* ¶ 8.) On

August 4, 2011, staff rejected the grievance on intake and returned the grievance to Duncan

because he failed to provide an informal complaint and complained of more than one issue.

(Whitehead Aff. ¶ 8; *id.* Encl. D, at 2.) The grievance instructed Duncan to provide the informal

complaint to the grievance office within five days. (Whitehead Aff. ¶ 8; *id.* Encl. D, at 2.)

On August 8, 2011, the institutional grievance office received a regular grievance from

Duncan with an attached copy of the informal complaint received by the housing unit on July 14,

2011, and responded to on July 22, 2011. (Whitehead Aff. ¶ 9; *id.* Encl. E, at 1–3.) Duncan

again explained that because he was in MCV Hospital and the infirmary for fourteen days, he

should be exempted from the thirty-day grievance deadline. (Whitehead Aff. ¶ 9; *id.* Encl. E, at 1.) On August 8, 2011, staff rejected the grievance because Duncan had failed to file it within thirty days of the incident of which he complained. Duncan filed no further complaints, grievances, or appeals.

## IV. Exhaustion Analysis

### A.     Duncan Failed to Exhaust his Claims

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002)

Here, Duncan clearly failed to exhaust his administrative remedies. Duncan failed to submit a complete and timely grievance pertaining to his Eighth Amendment claims, thus, he has failed to comply with 42 U.S.C. § 1997e(a). *See Woodford*, 548 U.S. at 90. The incident that is the subject of the instant action occurred on June 21, 2011. Under VDOC Operating Procedure 866.2, Duncan had thirty days, or until July 21, 2011 to submit a regular grievance. Duncan was responsible for submitting his informal complaint in a timely manner to allow staff to respond prior to the thirty-day time period permitted for filing a grievance. (Whitehead Aff. ¶ 5.) The evidence establishes that Duncan nevertheless waited until July 12, 2011 to file an informal complaint. Duncan filed two grievances on July 14, 2011 that were rejected because Duncan failed to demonstrate his attempts at informally resolving the complaint. Despite Duncan's delay, institutional staff responded to the informal complaint on July 22, 2011, seven days prior to the fifteen-day deadline of July 29, 2011 as set by institutional policy. After receiving the response to the informal complaint, Duncan waited until August 1, 2011 to write another grievance. Staff received and rejected the grievance on August 4, 2011, because Duncan failed to attach the informal complaint. Duncan wrote another grievance with his informal complaint on August 2, 2011 that was received and rejected as untimely on August 8, 2011.

**B.     Duncan Fails to Demonstrate Exhaustion Should Be Excused**

The Court construes Duncan to raise two arguments for excusing his failure to exhaust his administrative remedies. The Court also addresses Duncan's allegation that he submitted an informal complaint on June 27, 2011 for which he received no response. The Court finds all three arguments unavailing.

11

### 1.    Duncan's Infirmary Stay

First, in his Complaint, he contends that "[a]fter being released from MCV[,] Plaintiff was put in the infirmary at Greensville Corr. Center for 13 more days (6–24–11 to 7–6–11) being treated for head [injuries] during which time Plaintiff had no access to any belongings or papers to file grievance process." (Compl. 13.)  Generously construing the foregoing remark, Duncan suggests that under Operating Procedure § 866.1 "[g]rievances are to be submitted within 30 calendar days from the date of occurrence/incident or discovery of the occurrence/incident, *except in instances:  1) beyond the offender's control* . . . ." (Operating Procedure § 866.1.VI.A.1 (emphasis added)).

Although "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it," Duncan fails to demonstrate that he was somehow prevented from pursuing an informal complaint or grievance. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted).  Section "1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'" *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (citation omitted).  To excuse compliance with a grievance system, courts have required an inmate show that he was prevented from filing a grievance by affirmative action on the part of prison officials. *Graham v. Cnty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 738 (E.D. Va. 2009) (citing *Brown v. Croak*, 313 F.3d 109, 112–13 (3d Cir. 2002); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *Born v. Monmouth Cnty. Corr. Inst.*, No. 07–3771, 2008 WL 4056313, at *3–4 (D.N.J. Aug. 28, 2008)).

Defendants aver that inmates in the infirmary have access to the institutional grievance process, and are not prevented from filing grievances. (Whitehead Aff. ¶ 10.)  Duncan does not

claim that he lacked access to the grievance procedure during his time in the infirmary. Moreover, Duncan fails to provide, and the Court fails to discern, why he needed "belongings or papers" to file a grievance. (Compl. 13.) Duncan only needed to record his memory of the incident on the appropriate form to file an informal complaint or a grievance. Duncan's subjective beliefs about the availability of the grievance system fail to excuse his lack of exhaustion. *Lyon*, 305 F.3d at 809.

In addition, the record establishes that Duncan was released from the infirmary on July 6, 2011. Duncan waited another six days, or until July 12, 2011, to file an informal grievance. Thus, Duncan's hospitalization Duncan's fails to excuse his lack of exhaustion.

### 2.    No Formal Orientation to Grievance Process

Next, for the first time in his Brief in Opposition, Duncan argues that his failure to receive a formal orientation about Greensville's grievance procedure policy should excuse his failure to exhaust his administrative remedies. In support of this allegation, Duncan avers that he "was at no time instructed by anyone at Greensville Correctional Center as to the grievance procedure policy, nor was I given a Memorandum stating such policy." (Duncan Aff. ¶ 1.) Duncan argues that Defendants "offer[ ] no evidence that Duncan was oriented as to the grievance procedure other than a bold assertion with the assumption that all offenders are oriented . . . upon arrival to initial intake and each time an offender transferred to a new facility." (Br. Opp'n 1.) Assuming without deciding that Defendants provided Duncan with no formal orientation to the grievance procedure upon his admittance to Greensville Correctional Center, Duncan fails to demonstrate, as he must, that the failure to formally orient him made the grievance procedure unavailable. *See Moore*, 517 F.3d at 725.

13

Clearly, Greensville had a grievance process available for Duncan to file complaints. Thus, § 1997(e) required Duncan to exhaust all available administrative remedies as a mandatory pre-condition to filing his § 1983 action. *Porter*, 534 U.S. at 524. Courts have declined to find that a "lack of awareness" of grievance procedures makes such procedures unavailable and excuses compliance with the exhaustion requirement. *Albino v. Baca*, 697 F.3d 1023, 1026 (9th Cir. 2012) (holding that "[a]n inmate's lack of awareness of a . . . grievance procedure does not make the administrative remedy 'unavailable'"); *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) (holding that "[a] prisoner's lack of awareness of a grievance procedure . . . does not excuse compliance"); *Brock v. Kenton Cty., Ky.*, 93 F. App'x 793, 797 (6th Cir. 2004) (citations omitted) (same); *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 272–73 (10th Cir. 2003) (same); *Graham*, 668 F. Supp.2d at 741 (same).

Here, the "court cannot conclude based on the undisputed facts that [Duncan] was affirmatively prevented from utilizing the system or that he was wholly without any responsibility for his failure to [timely] grieve." *Graham*, 668 F. Supp. 2d at 739. Moreover, the record demonstrates that Duncan was aware of the grievance process. Duncan states that prior to his admittance to Greensville, the VDOC housed him in Halifax Correctional Center another VDOC facility governed by VDOC Operating Procedure 866.2. Duncan only swears that Greensville failed to provide appropriate orientation. Moreover, in his Complaint, Duncan alleges that on June 21, 2011, after Stacey attacked him, Duncan "filled out an Emergency Grievance to try to get some [medical] help." (Compl. 12.) Thus, Duncan was undisputably aware of the grievance process as evidenced by his utilization of the process.

The record demonstrates that, Duncan, through his own dilatoriness, failed to properly exhaust his administrative remedies. Thus, Duncan fails to establish that "through no fault of his

own, [he] was prevented from availing himself of" the grievance process." *Moore*, 517 F.3d at 725 (citations omitted); *see Graham*, 668 F. Supp. 2d at 741 (holding "that a prisoner's claim that a grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies").

### 3.   Alleged June 27, 2011 Informal Complaint

Duncan avers that "prior to July 14, 2011, [I] did fill out and stick in a closed locked door an Informal Complaint . . . which went unanswered and unacknowledged" and cites to an exhibit to his Brief in Opposition.  Duncan provides no sworn statement about the date he submitted this alleged informal complaint.  The cited exhibit contains an attachment to his grievance submitted on July 13, 2011, in which Duncan states that he wrote an earlier informal complaint "and put in door of cell HU 11/D7 on the night of 6/27/11." (Br. Opp'n Ex. 1–A, at 2.)  Duncan further alleges that he received no response to the informal complaint.  (*Id.*)  Duncan signed and dated this attachment on July 15, 2011, two days after he wrote the July 13, 2011 grievance that he seemingly suggests he attached it to.  (*Id.*)  As previously discussed, the contents of Duncan's Brief in Opposition fail to constitute admissible evidence.  Thus, Duncan fails to provide admissible evidence that he submitted an informal complaint on June 27, 2011, and accordingly, he creates no genuine dispute of fact about when he first filed an informal complaint.  For this reason alone, summary judgment should be granted.  *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (citation omitted) (internal quotation marks omitted) (concluding that "[a]iry generalities [and] conclusory assertions . . . [do] not suffice to stave off summary judgment . . .")

Moreover, while Respondents failed to address Duncan's allegation that he submitted an informal complaint on June 27, 2011, the Court observes that Duncan's allegations also warrant

15

no further briefing. First, Duncan claims that he received no response to his alleged June 27, 2011 informal complaint. However, the informal complaint form itself alerts Duncan that "[a] receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake." (Br. Opp'n Ex. 4–A, at 1.) After receiving no receipt by June 29, 2011, two days after he claims he "put [the grievance] in the door of cell HU 11/D7," (*id.* Ex. 1–A, at 2), Duncan should have acted promptly to inquire why no receipt had been issued and to remedy any error. Furthermore, Duncan's allegation that he filed an informal complaint on June 27, 2011, is difficult to square with his other allegations that he could not file an informal complaint or a grievance while he was housed in the infirmary between June 24, 2011 and July 6, 2011. (*See* Compl. 13); *cf. In re Family Dollar FLSA Litigation*, 637 F.3d 508, 512 (4th Cir. 2011) ("'[I]t is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct.'" (quoting *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010))). Thus, Duncan creates no genuine dispute of material fact about whether he submitted an earlier informal complaint. Accordingly, the evidence demonstrates that Duncan failed to exhaust his administrative remedies and Defendants' Motion for Summary Judgment (ECF No. 25) will be GRANTED.

## V. Conclusion

"Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, *see, e.g., Booth*, 532 U.S. at 735, dismissal with prejudice may be appropriate 'where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust.'" *McCoy v. Williams*, No. 3:10CV349, 2011 WL 5153253, at *4 (E.D. Va. Oct. 28, 2011) (quoting *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir.2004)). Duncan's claims meet these

16

criteria. Accordingly, the Motion for Summary Judgment (ECF No. 25) will be GRANTED. The action will be DISMISSED WITH PREJUDICE.

Duncan also filed a Motion to Compel Discovery (ECF No. 29) and a Renewed Motion for Production of Documents (ECF No. 34). Duncan's requests for discovery seek documents relating to his underlying Eighth Amendment claims, and do not appear to relate to exhaustion. Accordingly, the Motion to Compel Discovery (ECF No. 29) and the Renewed Motion for Production of Documents (ECF No. 34) will be DENIED AS MOOT.

An appropriate Order shall accompany this Memorandum Opinion.

Date: /- 6- 15
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge